**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | | |
|---|---|---|
| **JEREMY KENNEDY** | * | |
| **ADC # 93061** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No. 5:05CV00104 JLH/JFF |
| | * | |
| **KIM LUCKETT** | * | |
| | * | |
| **Defendant** | * | |

**PROPOSED RECOMMENDED DISPOSITION**

**I. INSTRUCTIONS**

The following recommended disposition has been sent to United States Chief District Judge Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

1


    2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## II.    RECOMMENDED DISPOSITION

### A.    Defendant Luckett's Motion to Dismiss

Plaintiff, an inmate confined to the Arkansas Department of Correction filed the present action on April 11, 2005 (docket entry #2), and he has been granted leave to proceed *in forma pauperis* (docket entry #3). Pending before the Court is a Motion to Dismiss (docket entry #8) and Brief in Support (docket entry #9) filed by Defendant Luckett. Plaintiff has filed his response (docket entry #19). Defendant Luckett contends that Plaintiff has accumulated three-strikes under 28 U.S.C. Section 1915(g) and is not entitled to *in forma pauperis* status in the present action.

The three-strikes provision of the Prison Litigation Reform Act ("PLRA"), requires a court to dismiss an inmate's *in forma pauperis* action if it determines that the prisoner

has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The Eighth Circuit has explicitly upheld the constitutionality of the three-strikes provision. *Higgins v. Carpenter*, 258 F.3d 797 (8th Cir. 2001).  In addition, the Eighth Circuit has recognized that civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim before the effective date of the PLRA, are to be counted in determining whether a prisoner has three "strikes." *See In re Tyler*, 110 F.3d 528, 529 (8th Cir.1997) (implicitly recognizing without discussion the dismissal of Plaintiff's pre-PLRA claims in determining his number of strikes).

The Court has discovered that Plaintiff has filed 26 actions in this district. Defendant Luckett correctly states that Plaintiff has had several actions dismissed for failure to prosecute or failure to exhaust administrative remedies.  Following the Eighth Circuit's recent decisions, the Court no longer treats as "strikes" dismissals where the procedural history of the case reveals an actual failure to exhaust. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (exhaustion is an affirmative defense that defendants must plead and prove).[1]

---

[1]The *Nerness* decision followed several unpublished opinions in which the Eighth Circuit held that a dismissal for an inmate's actual failure to exhaust should not be counted as a strike. *Millsap v. Jefferson County*, No. 03-1235, 85 Fed. Appx. 539 (8th Cir. Dec. 23, 2003); *Boyles v. Park*, No. 04-2161, 111 Fed. Appx. 861 (8th Cir. Nov. 8, 2004) (dismissal of a complaint in which an inmate alleges exhaustion and the procedural history of the case reveals an actual

Notwithstanding, Defendant Luckett states that *Kennedy v. Byers,* 5:04CV0008; *Kennedy v. Minor*, 5:04CV00046; *Kennedy v. Byers*, 5:94CV000682 and *Kennedy v. Reed*, 5:94CV00304 were all dismissed upon a finding that the Complaint lacked merit, and thus, Plaintiff has at least three qualifying strikes. Both *Kennedy v. Byers*, 5:94CV000682 and *Kennedy v. Reed,* 5:94CV00304 were dismissed upon Defendants' Motions for Summary Judgment. In several unpublished opinions, the Eighth Circuit has stated that when an inmate civil rights case is dismissed by a district court upon a motion for summary judgment, the dismissal does not constitute a "strike" for purposes of 28 U.S.C. Section 1915(g). *Williams v. Lehman,* No. 04-1879, 111 Fed Appx. 852 (8th Cir. Oct. 21, 2004); *Stallings v. Kemper*, No. 04-1585, 109 Fed. Appx. 832 (8th Cir. Sept. 15, 2004); *Crutchfield v. Terry*, No. 02-2130, 57 Fed. Appx. 271 (8th Cir. March 10, 2003); *Cleaver v. Kemna*, No. 01-1639, 33 Fed. Appx. 834 (8th Cir. May 1, 2002).

On February 24, 2004, *Kennedy v. Byers,* 5:04CV0008 was dismissed for failure to state a claim for relief, and the dismissal counts as a "strike." On February 27, 2004, *Kennedy v. Minor*, 5:04CV00046 was dismissed upon the finding that Plaintiff could not seek to overturn a prison disciplinary action through a Section 1983 action. In addition, the Court reviewed the closed file in *Kennedy v. Barker*, PB-C93-489 that was dismissed on October 13, 1995, upon the finding that Plaintiff could not seek to overturn a prison disciplinary conviction through a Section 1983 action. Citing *Neitzke v. Williams*, 490

---

failure to exhaust should not count as a strike); *Anderson v. Langley*, No. 03-2450, 84 Fed. Appx. 710 (8th Cir. Dec. 23, 2003) (failure to prosecute and failure to exhaust should not be counted as strikes).

U.S. 319, 330 n. 9 (1989), the Court reasoned that the Complaint "lacks an arguable basis in law or fact . . . and is so lacking in colorable merit that it must be dismissed as frivolous." This Court has followed *Armentrout v. Tyra*, No. 98-3161, 1999 WL 86355 (8th Cir. Feb. 9, 1999) which cited to *Rivera v. Allin*, 144 F.3d 719, 730-31 (11th Cir. 1998) and *Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 462-64 (5th Cir. 1998)), in treating dismissals on this basis as a "strike." Reviewing the Eighth Circuit's appellate docket, the undersigned concludes that Plaintiff has not acquired any "strikes" on appeal.[2] However, Plaintiff has acquired three qualifying "strikes" for his filings in this district.

The PLRA provides an exception to the three-strikes provision if the inmate is in imminent danger of serious physical injury. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir.1998). The Court finds the Eighth Circuit decision in *Ashley v. Dilworth* to be instructive. In the Complaint, Ashley, an Arkansas state inmate, alleged that he first notified defendants in September 1993 that he was being placed near inmates on his enemy alert list. *See id.* at 716. In June 1996, defendants threatened to transfer him so as to place him near an enemy with the intent that he be harmed. *See id.* Thereafter, in July 1996, he actually was placed near his enemy and was attacked with a sharpened, nine-inch screwdriver. *See id.* Ashley again notified defendants in May 1997 of his placement near

---

[2]Of the 26 actions, it appears 9 were dismissed for either failure to prosecute or failure to exhaust; 2 remain pending in this consolidated action; 5 were dismissed under the "three-strikes" provision prior to the court's change in policy with regard to counting dismissals for failure to prosecute and failure to exhaust as strikes; 2 settled; 3 were dismissed upon Defendants' Motion for Summary Judgment; 3 count as strikes; 1 resulted in a verdict for the Defendants after an appeal and 1 was dismissed after an evidentiary hearing before the magistrate.

listed enemies, and on June 28, 1997, he was again attacked by the same enemy who was then armed with a butcher knife. *See id.* Ashley filed his action shortly after the second attack, in July 1997, and supported the allegations of his complaint with documentary evidence. *See id.* In reversing the district court's dismissal of the Complaint pursuant to the three-strikes provision, the Eighth Circuit concluded that Ashley had "properly alleged an ongoing danger, and because his complaint was filed very shortly after the last attack, we conclude that Ashley meets the imminent danger exception in § 1915(g)." *Ashley*, 147 F.3d at 717. The Court emphasized that an allegation that a plaintiff had faced imminent danger in the past would be insufficient, but that a complaint is sufficient if it properly alleges that the plaintiff is in imminent danger at the time of filing. *See id.* General assertions are insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury. *Martin v. Shelton*, 319 F.3d 1048 (8th Cir. 2003) (conclusory assertions that defendants were trying to kill Martin by forcing him to work in extreme conditions despite his blood pressure condition were insufficient).

In response to Defendant's Motion to Dismiss (docket entry #19), and in his Amended Complaint (docket entry #6) in the lead action and the Complaint in the consolidated action, Plaintiff states he was attacked in population on April 19, 2004.[3] Thereafter, he requested protective custody, which was denied by Luckett, who responded

---

[3] Plaintiff's later pleadings in the lead action reveal that prison administrators concluded that while in population, Plaintiff falsely accused inmates Henderson and Strong of attacking him in an effort to get placed in protective custody. Plaintiff asserts that Strong and Henderson are members of the Disciple gang.

6

that he was "not suitable for P.C." Instead, Plaintiff was "arbitrarily" confined to administrative segregation. In administrative segregation, he was assigned to work and cell with violent inmates like murderers and rapists, and is currently celled with a man who is sentenced to life for beating another person to death. While he has been held in administrative segregation, he was attacked by another inmate while at work. He contends that he meets the imminent danger exception to the three strikes provision because he was denied protective custody by Luckett, and was instead placed in administrative segregation where he houses and works with "some of the most violent prisoners at the Cummins Unit" and was attacked by one.

Plaintiff's Motion for Preliminary Injunction in the lead action (docket entry #5) and Complaint in the consolidated action reveals that the administrative segregation inmate that Plaintiff asserts he was attacked by is named Orion Armento, and that the attack occurred on March 11, 2005.[4] As a result of the altercation, both inmates were disciplined; however, Plaintiff maintains that he was defending himself from Armento's attack. Before the altercation, Plaintiff had informed staff that he had problems with Armento, his cell mate, and he requested to transfer cells. According to the Complaint filed in the consolidated action, his initial requests were ignored by prison officials. After filing an

---

[4] In the motion filed in the lead action, Plaintiff requests that the Court issue an order directing that he be released from administrative segregation or that he be separated from other administrative segregation inmates for housing and work assignments so long as he remains confined to administrative segregation. In the motion filed in the consolidated action, he requests that he not be assigned to hoe squad unless his hoe squad does not work in same area as the hoe squad to which his enemy, Orion Armento, is assigned.

emergency grievance, Plaintiff spoke with Hobbs, convinced him of the situation, and obtained a cell reassignment.  Despite the cell change, Armento was not placed on Plaintiff's enemy alert list and the two remained on the same hoe squad.   The March altercation between the two occurred while they were at work assigned to the same hoe squad, #22,  but no longer housed in the same cell.  The Deputy Director's response dated June 6, 2005, to a grievance attached to the Complaint in the consolidated action states, and Plaintiff's grievance appeal confirms, that after the March 11, 2005 altercation, that both Armento and Plaintiff were placed on each other's enemy alert list.  Plaintiff's declaration filed in the consolidated action (docket entry #5) states that Armento and Plaintiff are assigned to different administrative segregation hoe squads, but that the hoe squads often work in the same areas coming within 15 to 20 feet.  Plaintiff states that he is often 30 feet from Armento.  He fears that the officers patrolling the hoe squads will not be able to protect him from a potential attack because they are apparently on horseback rather than on foot.   The hoe squad inmates work with tools such as hoes and swing blades that could be used as weapons.

Plaintiff states that he brings his action because he was "unconstitutionally assigned to administrative segregation after being attacked in population." (docket entry #33, Motion for Appointment of Counsel).  In another pleading, Plaintiff states, "the question this suit seeks to answer is whether Defendants were correct in stating that Plaintiff was not a suitable candidate for P.C. and whether he should've been segregated from admin. seg. inmates." (docket entry #26, Motion to Compel Discovery).

Unlike the Plaintiff in *Ashley* who was repeatedly placed near an individual on his enemy alert list despite his protests to the defendants, (who intended that he be harmed, and he was indeed attacked twice by that individual), Plaintiff makes a generalized complaint that no effort is made in housing and work assignments to separate inmates held in administrative segregation based upon their propensity for violence unless an inmate is granted protective status.  He contends that he is not a violent inmate, and he should be placed in a single man cell or in protective custody while assigned to administrative segregation so he is separated from violent inmates.   In the Amended Complaint (docket entry #6), Plaintiff also makes clear that he believes there is no basis for the Classification Committee to continue to hold him in administrative segregation. Although Plaintiff fears that he may be attacked in the future because he is housed with and assigned to work with "violent prone" inmates like "murderers and rapists," his fear is purely speculative and the possibility of harm too remote.  Even with regard to inmate Armento, Plaintiff is no longer housed with Armento, they are assigned to different hoe squads, and have been placed on each other's enemy alert list.  Plaintiff has not shown that the defendants are currently disregarding his safety or that he faces a real threat of immediate danger.  He has also alleged that he has had cups of urine thrown on him and that he has been spit on by other administrative segregation inmates while going to shower call.  Although the actions of these other inmates are barbaric, they do not support a finding of imminent danger.[5] *See*

---

[5] The undersigned notes that contrary to Plaintiff's suggestion, the fact that he was initially granted *in forma pauperis* status in this action does not mean there has been an implicit finding that he is in imminent danger of serious physical injury.

*also Elliott v. Byers*, 975 F.2d 1375 (8th Cir. 1992) (inmates on hoe squad working shoulder to shoulder did not face a pervasive risk of attack by other prisoners, armed guard supervises each hoe squad, prisoners are separated at the first sign of trouble and prisoners can avoid other prisoners through use of the enemy alert list).

      B.    Motion to Dismiss filed by Defendants Gay, Tate, McConnell, and Hobbs

On September 20, 2005, the Court ordered case 5:05CV190 consolidated with this action as the lead case. Defendants Lay, Tate, McConnell and Hobbs, who were named in the consolidated action, were served with process and have moved to dismiss the Complaint (docket entry #27) pursuant to Federal Rule of Civil Procedure 12(b)(5) because they were served with a copy of the Complaint from the lead action rather than from the consolidated action. Thus, they contend that they have had no formal notice of any claims pending against them. Given the foregoing analysis, the undersigned recommends that this Motion to Dismiss as well as all other pending motions in the lead action and the consolidated action be DENIED as moot.

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendant Luckett's Motion to Dismiss be GRANTED (docket entry #8).

2.    Plaintiff's *in forma pauperis* status be revoked pursuant to 28 U.S.C. Section 1915(g) because he has three qualifying strikes and does not meet the imminent danger exception.

3.    All remaining pending motions in the lead action, 5:05CV00104, and in the

consolidated action, 5:05CV00190, be DENIED as moot.[6]

    4.    This action is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. Section 1915(g) subject to the requirement that should Plaintiff wish to continue with this action, he must submit the required $250.00 filing fee, along with a motion to reopen the case, within 10 days of the entry date of this Order.

    5.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal taken from a Judgment and the accompanying Order dismissing this action pursuant to 28 U.S.C. Section 1915(g) would not be taken in good faith.

DATED this 30th day of January, 2006.

_____
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[6] The pending motions in the lead action include: Motion to Appoint Counsel (docket entry #4 and #33), Motion for Preliminary Injunctive Relief (docket entry #5), Defendants' Motion for Protective Order (docket entry #13), Plaintiff's Motion to Strike (docket entry #15), Plaintiff's Motion to Compel (docket entry #26), and Defendants' Motion to Dismiss (docket entry #27). The pending motions in the consolidated action include: Plaintiff's Motion for Appointment of Counsel (docket entry #3) and his Motion for Preliminary Injunction (docket entry #4).